**SIGNED THIS: June 14, 2006**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| DEMIRCO GROUP (North | ) | |
| America), L.L.C., | ) | |
| | ) | Case No. 06-70121 |
| Alleged Debtor. | ) | |

# O P I N I O N

This matter comes before the Court upon an involuntary petition filed February 17, 2006, under Chapter 7 of the Bankruptcy Code by Charter One Bank, N.A. ("Petitioning Creditor") against the alleged debtor, DemirCo Group (North America), L.L.C. ("Group"). Group has filed an Answer and Motion to Dismiss the involuntary petition.

**Factual Background**

Petitioning Creditor and Group have stipulated to most of the relevant facts. Group is one of several affiliated companies that borrowed money from Petitioning Creditor. In addition to Group, the affiliated companies include DemirCo Holdings Inc. ("Holdings"), DemirCo Industries, L.L.C. ("Industries"), and Western Precision ("WPI"). Prior to the liquidation of the various companies, Group held a 100% ownership of Industries and a 95% ownership interest of Holdings, while Holdings held a 100% ownership of WPI. Petitioning Creditor has also filed involuntary petitions in this Court against Industries and Holdings. Industries consented to the entry of an order for relief in the case filed against it. Holdings filed an Answer and Motion to Dismiss the petition filed against it but, after hearing, this Court entered an Order for Relief against Holdings. WPI has filed a voluntary petition under Chapter 7 in the United States Bankruptcy Court for the Northern District of California.

Group has stipulated that it is jointly and severally liable with Industries, Holdings, and WPI for all amounts borrowed from and owed to Petitioning Creditor. Group and Petitioning Creditor agree that the principal amount due as of July 15, 2005, was $20,213,645.95. Petitioning Creditor asserts that the total amount remaining due to it as of February 17, 2006, was not less than $12,879,684.29. Although Group declined to stipulate to that

amount, Group did stipulate that, even if all partial defenses which it may have as to the amount due were decided in its favor, the remaining amount owed by it to Petitioning Creditor would be millions of dollars.  Group also stipulated that, as of February 17, 2006, it owed Petitioning Creditor at least $12,300, which was not subject to a dispute and which was non-contingent.

Group and the affiliated companies entered into an initial forbearance agreement with Petitioning Creditor on April 19, 2005, and a second forbearance agreement on July 18, 2005.  Pursuant to those agreements, the assets of Group and the affiliated companies which secured their liabilities to Petitioning Creditor have been liquidated.  Group's business consisted of providing accounting, payroll, graphic design, computer and other corporate services to the affiliated companies.  Group has not conducted any business since its assets were sold on August 13, 2005.

**Legal Analysis**

The involuntary petition in this case was filed pursuant to Section 303 of the Bankruptcy Code, which provides in pertinent part:

> (a)  An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter which such case is commenced.
>
> (b)  An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title --

      (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

      (2)  if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $12,300 of such claims;

\* \* \* \*

      (c)  After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

\* \* \* \*

      (h)  If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if --

      (1)  the debtor is generally not paying such debtor's debts as such debts become due unless such debts are th subject of a bona fide dispute as to liability or amount; or

      (2)  within 120 days before the date of the filing of the petition, a custodian, other

> than a trustee, receiver, or agent appointed
> or authorized to take charge of less than
> substantially all of the property of the
> debtor for the purpose of enforcing a lien
> against such property, was appointed or took
> possession.

11 U.S.C. § 303.

In its Answer and Motion to Dismiss, Group raised three issues. First, Group asserted that, because it had more than 12 creditors on the date of filing, three petitioning creditors were required to file the involuntary petition. Second, Group argued that, because portions of the amounts due to Petitioning Creditor are subject to a bona fide dispute, Petitioning Creditor does not meet the statutory requirements for an entity to be eligible to file an involuntary petition. Third, Group asserted that the dispute between it and Petitioning Creditor is a two-party dispute which does not belong in the Bankruptcy Court and, accordingly, the case should be dismissed on bad faith grounds. Group does not contest the allegation in the involuntary petition that it is not generally paying its debts as they become due.

Because it alleged in its Answer and Motion to Dismiss that it had more than 12 creditors, Group was required to file a list of such creditors. *See* Fed.R.Bankr.P. 1003(b). Group filed a list with its original Answer and has amended its creditors list on several occasions. Group's third amended list ("Group's List") was filed April 13, 2006, and it is that list that the Court will consider in deciding whether three petitioning creditors were

required in order to file the involuntary petition in this case.

Group's List contains the names and requisite information for 52 different creditors. The parties have stipulated, however, that 29 of the listed creditors are insiders and should not be counted in determining the number of creditors necessary to file the involuntary petition. Further, the parties have agreed that four more of the listed creditors hold claims which are either contingent as to liability or subject to a bona fide dispute and, accordingly, should also not be counted. *See* 11 U.S.C. § 303(b)(1). Thus, only 19 creditors remain to be considered.

Group's List discloses obligations to the State of California for unemployment taxes in the amount of $951.28 and to United Heartland Insurance Company for insurance in the amount of $1,000. Petitioning Creditor has not raised any issue with respect to these two creditors. Both should be counted in determining the number of Group's creditors.

The crux of the dispute between Group and Petitioning Creditor involves the remaining 17 creditors, all of whom are former employees of Group and all of whom are owed vacation pay earned while previously so employed. Predictably, Group says that these creditors must be counted while Petitioning Creditor says they should be excluded from the count.

In determining the number of creditors of an alleged debtor, creditors who are employees, insiders, or who have received

avoidable transfers from the debtor are not counted.  11 U.S.C. § 303(b)(2).  The policy for these exclusions from the count has been explained as "logical in that these are creditors whose financial or other relationship with the debtor would make them unlikely to join in an involuntary petition against the debtor."  1 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 2.03[C] (4th ed. 1996, Supp. 2006).

This Court has been unable to find any case where a court has previously considered whether "former employees" are "employees" for purposes of being excluded from the count of creditors.  Group has cited In re Gill Enterprises, Inc., 15 B.R. 328 (Bankr. D. N.J. 1981) in support of its position that former employees must be counted.  Gill deals, however, with whether the claims of certain former employees were contingent or disputed when those former employees sought to participate voluntarily as petitioning creditors.  Gill does not directly address the issue to be decided here.

This Court believes that "former employees" are a different group than "employees" and, accordingly, should be counted in determining the number of creditors of Group as of the date of filing.  Upon termination of employment, employees lose the relationship with the employer and the financial self-interest which causes "employees" to be excluded from the count.  "Former employees" are no longer under the control or supervision of the

employer.  No policy reasons support excluding "former employees" from the count.

Petitioning Creditor, relying on <u>In re United Kitchen Associates</u>, 33 B.R. 214 (Bankr. W.D. La. 1983), has argued that the basis for excluding employees from the count is that they are "friendly" to the employer.  Petitioning Creditor thus suggests that whether the "former employees" in the case remain "friendly" to Group is a question of fact and urges this Court to explore the issue further as to the individual former employees.  The Court declines to proceed in that fashion.  Although the policy behind excluding groups such as employees and insiders from the count is based on the notion that they are "friendly" or have some self-interest which makes them unlikely to participate in an involuntary case, the statute neither requires nor allows an inquiry into whether a particular excluded creditor is actually friendly or self-interested.  Likewise, creditors who do not fall into one of the excluded groups cannot be excluded on an individual basis simply because the creditor may have a friendly relationship with the debtor or may have some self-interest in keeping the debtor out of bankruptcy.  No authority exists for an inquiry into the motivations of individual members of either included or excluded groups, and no such inquiry will be made here.

Petitioning Creditor has also urged this Court to consider the employment of some of the former employees by an affiliate of Group

after the termination of their employment by Group. CCI Acquisition Company, L.L.C., *n/k/a* T/CCI ("T/CCI") was the buyer of a substantial portion of the assets of Group, Holdings, and Industries. The parties have stipulated that T/CCI is an affiliate of Group, Holdings, and Industries. T/CCI hired some former employees of Group after their termination from Group, including 15 of the 17 employees who now hold vacation pay claims. Nine of the 15 hired by T/CCI were still employed by T/CCI as of the filing date.

Petitioning Creditor argues that, by reason of the fact that T/CCI, as an affiliate, is an insider to Group, its nine employees should be excluded from the count of Group's creditors. This Court disagrees. Insiders are defined by statute and the definition does not include "employees of affiliates." 11 U.S.C. § 101(31). There is no authority or reason to expand the definition of the term "insider" to include some of Group's former employees because they are now employees of an affiliate.

Finally, Petitioning Creditor raises the question of whether some of the former employees should be excluded because they may have received from T/CCI "vacation pay comparable to what the employee had accrued with (Group) but which were (sic) not paid." The evidence presented on this issue is sketchy, at best. The parties did not stipulate to the details, but it appears to the Court from what was presented that T/CCI may have granted employees

accrued vacation time immediately upon employment in amounts similar to what those employees had accrued at Group. The Court cannot find that such an offer, in and of itself, constitutes a release of Group's obligations to these employees. Payment of benefits by T/CCI to the former employees is not relevant, absent proof that the employees accepting employment and the corresponding benefits with T/CCI actually waived or released their claims against Group and, therefore, are no longer creditors of Group. The existence of such proof has not been suggested.

This Court concludes that the 17 former employees on Group's List should all be counted in determining the number of creditors of Group as of the date of filing. Including the State of California and United Heartland Insurance Company, Group had at least 19 creditors who held unsecured claims which were not contingent as to liability and which were not subject to a bona fide dispute as to liability or amount. The total amount of these 19 claims exceeds $12,300. Three petitioning creditors were necessary to file an involuntary petition against Group on February 17, 2006. Group's Motion to Dismiss should be granted because the involuntary petition was not filed by three petitioners.[1]

---

[1] Because the Court's decision on the issue of the number of required petitioners may be dispositive of the case, the Court did not reach the other issues raised in Group's Motion to Dismiss. The Court did, however, decide the identical issues based on the same stipulated facts in the related case, In re DemirCo Holdings, Inc., Case No. 06-70122. The parties are directed to the Opinion and Order entered by this Court on June 9, 2006, in the Holdings

Petitioning Creditor has requested additional time to seek to have other creditors join the petition. Bankruptcy Rule 1003(b) requires the Court to afford a reasonable opportunity for other creditors to join in a petition before a hearing is held. *See* Fed.R.Bankr.P. 1003(b). In this case, a hearing has already been held, but the Court believes that a short additional time for Petitioning Creditor to add creditors would not be inappropriate. Petitioning Creditor's defenses to the Motion to Dismiss were not frivolous and there was limited case law authority to guide the parties. Group is out of business and, therefore, the usual concern of creating "gap" creditors when there is a delay in an involuntary case is not an issue here.

Petitioning Creditor will be given 30 days to file an amended petition with the requisite number of creditors. If such amended petition is not filed, the case will be dismissed without further notice.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###

---

case for a discussion of all other issues raised by the Motion to Dismiss.